IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STELLITA MARTIN-MCFARLANE,<br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA, *et al.*,<br>Defendants. | :<br>:<br>:<br>: CIVIL ACTION NO. 17-0118<br>:<br>:<br>: |

MEMORANDUM OPINION

Rufe, J.                                                                October 25, 2017

Plaintiff Stellita Martin-McFarlane, a registered nurse, filed suit after she was assaulted by a hospitalized prisoner during his attempt to escape from custody. Defendants, the City of Philadelphia, Correctional Officer ("C.O.") Christopher Cox, C.O. Thomas Doman, Albert Einstein Medical Center ("AEMC"), Albert Einstein Healthcare Network ("AEHN"), Albert Einstein Medical Associates, Inc. ("AEMA"),[1] and the Department of Protective Services ("DPS"),[2] have moved to dismiss the complaint for failure to state a claim. For reasons that follow, the motions will be granted in part and denied in part.

I. BACKGROUND

The complaint alleges the following facts, which are assumed to be true for purposes of the motions to dismiss. On January 11, 2015, prisoner Justin Mackie was transported to AEMC for a routine medical procedure.[3] Mackie had previously been arrested on multiple charges, including, among others, murder, attempted murder, aggravated assault, robbery, and resisting arrest.[4] At the time he was brought to AEMC, he was being held without bail "because he was

---

[1] AEMC, AEHN, and AEMA are also referred to as the "hospital entities."

[2] "John Doe Numbers 1 through 10" are also named as Defendants in this case. It appears from the context of the complaint that DPS may be related to the hospital entities.

[3] Compl. at ¶ 32.

[4] *Id.* at ¶ 28.

such a danger to the community."[5]

Plaintiff alleges that Mackie should have been treated as a "special security inmate" pursuant to Philadelphia Prisons Policies and Procedures, Policy Number 3.A.12 ("the policy").[6] This policy requires that, when a prisoner is designated as a "special security inmate" and needs to be transported to an outside hospital, the escorting officers will be notified of the prisoner's high escape risk or high violence risk.[7] In addition, the policy requires correctional officers to notify the hospital's chief of security of the prisoner's arrival.[8] Notably, the policy states that "mechanical restraints should never be removed unless directed to do so for medical treatment."[9]

As a registered nurse working at AEMC, Plaintiff was assigned to tend to Mackie's medical care.[10] Plaintiff alleges that sometime during Mackie's treatment on January 11, 2015, C.O. Cox left the hospital room, leaving C.O. Doman alone in the room with Mackie.[11] C.O. Doman then removed Mackie's restraints.[12] "Mackie seized upon the opportunity," overpowered C.O. Doman, and began to escape by running down the hallway.[13] Plaintiff saw Mackie run past her, yelled for help, and ran towards the nurses' station to call security.[14] As she ran, however, Mackie intercepted Plaintiff "and brutally assaulted" her.[15] Plaintiff suffered "a concussion[,]

---

[5] *Id.* at ¶ 29.

[6] *Id.* at ¶¶ 33-34.

[7] *Id.* at ¶ 34.

[8] *Id.* at ¶ 36.

[9] *Id.* at ¶ 38 (citing Ex. A at 7).

[10] *Id.* at ¶¶ 50-51.

[11] *Id.* at ¶¶ 46-47.

[12] *Id.* at ¶ 48.

[13] *Id.* at ¶ 49.

[14] *Id.* at ¶¶ 50-54.

[15] *Id.* at ¶ 55.

2

back pain, neck pain, bruising, and post-traumatic stress disorder" from the assault.[16]

On January 10, 2017, Plaintiff initiated this action against Defendants. She alleges that Defendants the City of Philadelphia, C.O. Cox, and C.O. Doman violated her constitutional rights under the First, Fourth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. In particular, she asserts that she was deprived of her "right to be free from unreasonable searches and seizures, excessive force, false arrest, false imprisonment, verbal abuse, to be secure in one's person and property, and to due process and equal protection of the law."[17] She also raises state law claims of "assault and battery, false imprisonment, intentional infliction of emotional distress, trespass, interference with state constitutional rights, negligence, gross negligence, and negligent hiring, training, retention, and supervision" against all Defendants.[18]

## II. LEGAL STANDARD

Dismissal for failure to state a claim is appropriate if the complaint fails to allege facts sufficient to establish a plausible entitlement to relief.[19] In evaluating Defendants' motions, the Court "take[s] as true all the factual allegations of the [complaint] and the reasonable inferences that can be drawn from them," but "disregard[s] legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements."[20] Instead, to prevent dismissal, a complaint must "set out sufficient factual matter to show that the claim is facially plausible."[21]

---

[16] *Id.* at ¶ 57.

[17] *Id.* at ¶ 60.

[18] *Id.* at ¶¶ 72-74.

[19] *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

[20] *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

[21] *Fowler*, 578 F.3d at 210 (citation and internal quotation marks omitted).

3

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22]

## III. ANALYSIS

Plaintiff raises several claims against the City of Philadelphia, C.O. Cox, and C.O. Doman, including § 1983 claims and state law claims. She also alleges numerous state law claims against the hospital entities, AEMC, AEHN, AEMA, as well as DPS. The Court will first address the § 1983 claims against the City, Cox, and Doman, and then will analyze the state law claims against AEMC, AEHN, AEMA, and DPS.

### A. Section 1983 Claims and the City of Philadelphia, C.O. Cox, and C.O. Doman

Plaintiff asserts two types of Fourteenth Amendment due process claims under § 1983: a state-created danger claim against C.O. Cox and C.O. Doman, and a *Monell* claim[23] against the City of Philadelphia. In addition, Plaintiff alleges that her First Amendment rights were violated. She also alleges that her Fourth Amendment right to be "secure in ones' person and property" and to be free from unreasonable searches, seizures, and excessive force was violated.[24]

#### 1. State-Created Danger Claim Against C.O. Cox and C.O. Doman

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States.[25] Plaintiff alleges that her substantive due process rights under the Fourteenth Amendment were violated when C.O. Cox and C.O. Doman failed to protect her from

---

[22] *Santiago*, 629 F.3d at 128 (citations and internal quotation marks omitted).

[23] *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

[24] Additionally, Plaintiff asserts a right to be free from "false arrest, false imprisonment, [and] verbal abuse" under the Fourth Amendment. Compl. at ¶ 60. There are no facts suggesting a false arrest or verbal abuse on the part of Defendants, therefore, any asserted claim for false arrest or verbal abuse will be dismissed with prejudice. Plaintiff's claim for false imprisonment under Pennsylvania law, not the Fourth Amendment, will be discussed below.

[25] *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

4

Mackie's assault. In particular, she alleges Defendants' conduct afforded Mackie the opportunity to attempt an escape from custody and assault her.

"Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals."[26] The state-created danger theory operates as an exception to this general rule and requires plaintiffs to meet a four-part test:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[27]

Defendants contend that the complaint fails to satisfy the second and fourth elements of this test—that the state actor's behavior "shocks the conscience," and that the defendants' affirmative conduct rendered Plaintiff more vulnerable to danger.

Although "[m]ere negligence is not enough to shock the conscience,"[28] acts motivated by harmful intent are likely to rise to the level of conscience-shocking behavior.[29] Conduct that falls between these two extremes requires courts to make "closer calls" based on the circumstances of each case.[30] Here, Plaintiff alleges that C.O. Cox and C.O. Doman left Mackie, a man charged with murder, attempted murder, aggravated assault, robbery, and resisting arrest, and who was denied bail, unrestrained in a public hospital. C.O. Cox's decision to exit the hospital room and leave Mackie attended with only one correctional officer, and C.O. Doman's

---

[26] *Sanford v. Stiles*, 456 F.3d 298, 303-04 (3d Cir. 2006) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989)).

[27] *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (citation omitted).

[28] *Sanford*, 456 F.3d at 311.

[29] *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006).

[30] *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (internal quotation marks omitted)).

5

decision to remove Mackie's restraints, may "shock the conscience" given the violent nature of the crimes for which Mackie was in custody. Taken as true and construed liberally at this early stage in the litigation, these facts about C.O. Cox and C.O. Doman's conduct in failing to secure a potentially violent prisoner may rise significantly above mere negligence to a level that shocks the conscience.

The fourth element requires state officials to engage in affirmative conduct that renders the plaintiff more vulnerable to danger.[31] Plaintiff alleges that the C.O. Cox left the hospital room when he was supposed to be monitoring Mackie and that C.O. Doman removed the restraints securing Mackie to the hospital bed, allowing Mackie to attempt an escape. At this early stage in the litigation, these allegations sufficiently describe affirmative acts that endangered Plaintiff, who was directly engaged in caring for a potentially violent prisoner.

Defendants C.O. Cox and C.O. Doman assert that they are entitled to qualified immunity from Plaintiff's state-created danger claim. "Qualified immunity shields officials from liability when their conduct does not violate 'clearly established' constitutional rights of which a 'reasonable person' would have been aware at the time the incident occurred."[32] "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[33]

Because qualified immunity results in "immunity from suit rather than a mere defense to liability," determining whether officials are entitled to qualified immunity should be determined

---

[31] *Morrow*, 719 F.3d at 177.

[32] *O'Donnell v. Knott*, No. 16-2040, 2017 WL 4467508, at *4 (E.D. Pa. Oct. 6, 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[33] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

as early as possible.³⁴ At the pleading stage, "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."³⁵ "The burden of establishing qualified immunity falls to the official claiming it as a defense."³⁶

Establishing qualified immunity involves a two-step inquiry. First, a court must answer "this threshold question: Taken in the light most favorable to the party asserting the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"³⁷ "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."³⁸

Accepting all facts in the complaint as true, Plaintiff alleges that her substantive due process rights under the Fourteenth Amendment were violated when C.O. Cox and C.O. Doman brought a prisoner known to be dangerous to a public hospital, maintained only one guard on him instead of two, and removed his restraints, thus creating a dangerous situation for those in the immediate vicinity such as Plaintiff. The next, sequential step is to ask whether this right was clearly established at the time of the incident.³⁹ "The relevant, dispositive inquiry in determining whether a [federal] right is clearly established is whether it would [have] be[en] clear to a reasonable officer that his conduct was unlawful in the situation he confronted."⁴⁰ Although this is a question of law, the facts inform the Court in making this determination. As the United States Supreme Court has explained, "[t]his inquiry must be undertaken in light of the

---

³⁴ *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (internal quotation marks and emphasis omitted).

³⁵ *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

³⁶ *Burns v. Pennsylvania Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011).

³⁷ *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

³⁸ *Id.*

³⁹ *Id.*

⁴⁰ *Id.* at 202.

7

specific context of the case, not as a broad general proposition."[41] In fact, Defendants assert in their motion that "qualified immunity applies unless the *particular conduct* of an official is clearly unconstitutional in light of the specific context of the case."[42] More facts are needed here to determine whether the correctional officers' conduct violated a clearly established constitutional right of which reasonable officials would have been aware at the time the incident occurred.[43] For example, discovery as to any reason, or lack thereof, for leaving the hospital room or removing Mackie's restraints will inform this determination. Although the Court is aware that it is important to resolve qualified immunity questions at the earliest possible stages of litigation, doing so here would be "in tension with the reality that factual disputes often need to be resolved before determining whether [a] defendant's conduct violated a clearly established right."[44] A decision as to qualified immunity now, therefore, is premature.[45]

### 2. *Monell* Claim Against the City of Philadelphia

In a *Monell* claim, a municipality may incur liability under § 1983 only when its policy or custom causes a particular constitutional violation.[46] When "a municipality's failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants," such failure to train may itself constitute a policy or custom that is actionable under § 1983.[47] However, "a mere showing that a particular officer violated a policy, or that better training would have enabled the officer to avoid the injury-causing conduct, is insufficient to

---

[41] *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citations omitted).

[42] Mot. to Dismiss (Doc. No. 7) at 8 (internal quotation marks and citation omitted).

[43] *See Pearson*, 555 U.S. at 239 (noting that the qualified immunity "two-step inquiry is an uncomfortable exercise" where the determination "may depend on a kaleidoscope of facts not yet fully developed").

[44] *Curley v. Klem*, 298 F.3d 271, 277-78 (3d Cir. 2002).

[45] *Id.* at 278 (noting that a decision on qualified immunity is "premature when there are unresolved disputes of historical facts relevant to the immunity analysis.").

[46] *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citing *Monell*, 436 U.S. at 690 n.55).

[47] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted).

8

establish a municipality's liability under § 1983 for failure to train."[48]  Plaintiff alleges that the City had a policy of designating prisoners as "special security inmates" and requiring that medical restraints "should never be removed unless directed to do so for medical treatment."[49] Plaintiff also alleges that the City failed to adequately train C.O. Cox and C.O. Doman in accordance with this policy.  Accordingly, the policy shows the need for security precautions when a prisoner is hospitalized, and if C.O. Cox and C.O. Doman were not trained in procedures to avoid escape attempts by dangerous prisoners, the City may be liable for the harm Plaintiff suffered.  At this preliminary stage in the litigation, Plaintiff has alleged a *Monell* failure to train claim against the City.

### 3. Other Section 1983 Claims Against the City of Philadelphia, C.O. Cox, and C.O. Doman

In addition to Plaintiff's § 1983 claim for violation of her substantive due process rights under the Fourteenth Amendment, she also raises violations of her constitutional rights under the First and Fourth Amendments.

#### a. Plaintiff Fails to State a § 1983 Claim for Violation of Her First Amendment Rights

Plaintiff raises a § 1983 claim alleging that Defendants violated her rights under the First Amendment.[50]  The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."[51]  Violations of the First Amendment in the § 1983

---

[48] *Marable v. W. Pottsgrove Twp.*, 176 F. App'x 275, 283 (3d Cir. 2006) (citations omitted).

[49] Compl. at ¶¶ 34, 38.

[50] *Id.* at ¶ 60.

[51] U.S. Const., Amend. I.

9

context often involve allegations of retaliation against the plaintiff for constitutionally protected free speech or free exercise of religion.[52] Although the complaint states that Plaintiff's First Amendment rights were violated, there are no facts suggesting any retaliation on the part of Defendants against the Plaintiff, nor are there any facts indicating Plaintiff engaged in constitutionally protected speech during the incident. As it does not appear that amendment of the complaint could cure these defects, this claim will be dismissed with prejudice.

### b. Plaintiff Fails to State a § 1983 Claim for Violation of Her Fourth Amendment Rights

Plaintiff asserts a § 1983 claim alleging Defendants violated her Fourth Amendment rights to "be secure in ones' person and property" and to be free from unreasonable searches, seizures, and excessive force.[53] Although the Fourth Amendment recognizes "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,"[54] Plaintiff alleges no facts suggesting that Defendants searched, seized, or exerted any type of force on her in any way. In fact, she does not suggest that C.O. Cox and C.O. Doman touched her at all. Amendment of the complaint will not cure this defect, and the § 1983 claim for violations of Plaintiff's Fourth Amendment rights will be dismissed with prejudice.

### B. State Law Claims Against All Defendants

Plaintiff alleges the following state law claims: "assault and battery, false imprisonment, intentional infliction of emotional distress, trespass, interference with state constitutional rights, negligence, gross negligence, and negligent hiring, training, retention, and supervision."[55]

---

[52] *See, e.g., Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (holding that a state prisoner stated a First Amendment retaliation claim under § 1983 by alleging that a corrections officer planted contraband near his locker in retaliation for complaints he filed against the officer).

[53] Compl. at ¶ 60.

[54] U.S. Const., Amend. IV.

[55] Compl. at ¶¶ 72, 74.

10

### 1. State Law Claims Against the City of Philadelphia, C.O. Cox, and C.O. Doman

#### a. Assault and Battery

Plaintiff alleges that the City, C.O. Cox, and C.O. Doman should be liable for assault and battery.[56] "Under Pennsylvania law, battery is defined as an intentional 'harmful or offensive contact with the person of another.'"[57] "The fact that contact occurs without consent is sufficient to establish that it is offensive, and no intent to harm the plaintiff need be established."[58] An assault can be described as "an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery."[59] In other words, battery is an offensive touching without consent, and assault is an action that makes a victim believe that a battery is about to occur.

The complaint is devoid of facts showing that Defendants touched Plaintiff or intended to put Plaintiff in reasonable apprehension of an immediate battery. Therefore, the assault and battery claims against the City, C.O. Cox, and C.O. Doman will be dismissed with prejudice.

#### b. False Imprisonment

Plaintiff asserts a claim of false imprisonment against the City, C.O. Cox, and C.O. Doman. To state a claim for false imprisonment under Pennsylvania law, a plaintiff must plausibly allege that: (1) she was detained; and (2) the detention was unlawful.[60] Construed in the light most favorable to Plaintiff, the complaint fails to state that Plaintiff was detained, or

---

[56] *Id.* at ¶ 72.

[57] *Nace v. Pennridge Sch. Dist.*, 185 F. Supp. 3d 564, 584 (E.D. Pa. 2016) (quoting *C.C.H. v. Philadelphia Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008)).

[58] *Id.* (quoting *Cooper ex rel. Cooper v. Lankenau Hosp.*, 51 A.3d 183, 191 (Pa. 2012)) (internal quotation marks and brackets omitted).

[59] *Regan v. Upper Darby Twp.*, 363 F. App'x 917, 921 (3d Cir. 2010) (quoting *Cucinotti v. Ortmann*, 159 A.2d 216, 217 (Pa. 1960) (internal quotation marks and emphasis omitted)).

[60] *Gwynn v. City of Philadelphia*, 719 F.3d 295, 304 n.4 (3d Cir. 2013) (citing *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)).

11

how Defendants may have been involved in any detention. This claim will be dismissed with prejudice.

### c. Intentional Infliction of Emotional Distress

Plaintiff raises an intentional infliction of emotional distress claim against the City, C.O. Cox, and C.O. Doman.[61] Pennsylvania courts recognize a tort for intentional infliction of emotional distress.[62] To recover for intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct; (2) that was either intentional or reckless; (3) which caused emotional distress; and (4) that the emotional distress must be severe.[63] At the pleading stage, the court is "to decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute 'outrageousness' as a matter of law."[64] As a matter of law, outrageousness occurs only when "the case is one in which the recitation of the facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, 'outrageous.'"[65] Courts have limited outrageous conduct to that which goes "'beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'"[66]

Here, Plaintiff alleges that the City failed to properly train its employees in procedures regarding safe transportation of prisoners, that C.O. Cox left the hospital room where he was supposed to be monitoring Mackie, and that C.O. Doman removed Mackie's restraints.[67] In sum,

---

[61] Compl. at ¶ 72.

[62] *See, e.g., Bartanus v. Lis*, 480 A.2d 1178, 1184 (Pa. Super. Ct. 1984) (citing cases).

[63] *Jordan v. City of Philadelphia,* 66 F. Supp. 2d 638, 642 (E.D. Pa. 1999) (citations omitted).

[64] *Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000) (citations omitted).

[65] *Id.* at 428 (internal quotation marks and citation omitted).

[66] *Fugarino v. University Servs.*, 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000) (quoting *Clark v. Township of Falls*, 890 F.2d 611, 623 (3d Cir. 1989)).

[67] Compl. at ¶¶ 47, 48, 62.

12

the complaint alleges that Defendants let Mackie, a man charged with murder, attempted murder, aggravated assault, robbery, and resisting arrest, unrestrained in a public hospital. At this preliminary stage in the litigation, these facts may suggest Defendants' conduct was extreme and outrageous. Further, construing all inferences in the light most favorable to Plaintiff, the complaint does not suggest that Defendants acted intentionally; however, it may suggest that Defendants' conduct was reckless. The complaint also plausibly states that Defendants' conduct may have caused Plaintiff's emotional distress, and that her distress was severe. Therefore, Plaintiff has stated an intentional infliction of emotional distress claim.

### d. Trespass

Plaintiff alleges that the City, C.O. Cox, and C.O. Doman should be liable for trespass.[68] Under Pennsylvania law, trespass "is defined as an unprivileged, intentional intrusion upon land in possession of another."[69] It is unclear how this state tort claim is at all related to the facts of this case. If instead, Plaintiff refers to trespass in the archaic sense of "trespass on the case," the "precursor to . . . modern-day tort claims," then it does not stand as an independent cause of action.[70] Thus, the trespass claim will be dismissed with prejudice.

### e. Interference with State Constitutional Rights

Plaintiff raises a claim of "interference with state constitutional rights" against the City, C.O. Cox, and C.O. Doman.[71] However, Plaintiff does not identify any specific state constitutional rights Defendants allegedly violated. Moreover, Pennsylvania courts have not recognized any private right of action for money damages in violation of the Pennsylvania

---

[68] *Id.* at ¶ 72.

[69] *Boring v. Google, Inc.*, 362 F. App'x 273, 280 (3d Cir. 2010) (internal quotation marks and citations omitted).

[70] *Black's Law Dictionary* (9th ed. 2009) at 1643.

[71] Compl. at ¶ 72.

13

Constitution.[72] This claim will be dismissed with prejudice.

### f. Negligence Claims

Plaintiff asserts negligence and gross negligence claims against C.O. Cox and C.O. Doman, as well as a negligent hiring, training, retention, and supervision claim against the City.[73] Under Pennsylvania law, "[a] successful negligence claim requires a plaintiff to allege facts which establish the breach of a legally recognized duty of the defendant that is causally connected to the actual damages suffered by the plaintiff."[74] Gross negligence requires something more than ordinary negligence, but does not rise to the level of intentional indifference to the consequences of one's acts.[75] A negligent hiring, training, retention, and supervision claim refers to an employer's breach of its duty to properly train its employees.

Here, Plaintiff alleges plausible facts showing that C.O. Cox and C.O. Doman had a duty to monitor Mackie at the hospital to ensure that he did not cause harm, and breached this duty by failing to monitor Mackie and removing his restraints. By failing to do so, Mackie attempted an escape and assaulted Plaintiff. Therefore, the complaint plausibly states a negligence and gross negligence claim against C.O. Cox and C.O. Doman. The complaint also plausibly states a negligent hiring, training, retention, and supervision claim against the City by alleging facts suggesting that the City failed to properly train C.O. Cox and C.O. Doman on its policy of safely transporting prisoners outside the prison.

Defendants argue that they are entitled to governmental immunity on the negligence claims. Pennsylvania law has long immunized municipal employees from civil tort liability

---

[72] *Mount Airy #1, LLC v. Pa. Dep't of Revenue*, 154 A.3d 268, 280 n.11 (Pa. 2016).

[73] *Id.*

[74] *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 414 (E.D. Pa. 2016) (internal quotation marks and citations omitted).

[75] *In re Scheidmantel*, 868 A.2d 464, 467 (Pa. Super. Ct. 2005).

14

unless they act with "willful misconduct."[76] Furthermore, Pennsylvania law provides that, with limited statutory exceptions, no municipality or local agency "shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[77] The limited statutory exceptions include, for example, negligence with respect to vehicle liability.[78] None of the statutory exceptions apply to this case. Accordingly, Plaintiff's negligence and gross negligence claims against C.O. Cox and C.O. Doman, and the negligent hiring, training, supervision, and retention claim against the City, will be dismissed on the grounds of governmental immunity.

### 2. State Law Claims Against Albert Einstein Medical Center, Albert Einstein Healthcare Network, Albert Einstein Medical Associates, Inc., and the Department of Protective Services

Last, Plaintiff asserts the same state law claims mentioned above against her employers, AEMC, AEHN, and AEMA, as well as DPS.[79] Defendants argue that the state law claims should be dismissed because Plaintiff's exclusive remedy is a worker's compensation claim. Therefore, according to Defendants, Plaintiff cannot assert state law claims for her work-related injuries.

The Pennsylvania Workers' Compensation Act ("WCA") is the exclusive remedy for work-related injuries suffered by an employee[80] and provides employers with immunity from suits for injuries that flow from work-related incidences that are caused by a third party.[81]

---

[76] See 42 Pa. Const. Stat. Ann. § 8550; see also McNeal v. City of Easton, 598 A.2d 638, 642 (Pa. Commw. Ct. 1991) (establishing that "a finding of 'willful misconduct' under § 8550 requires a party to have acted with even more than gross negligence or recklessness"); Lancie v. Giles, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990) (dismissing negligence claims brought against police officers).

[77] See 42 Pa. Const. Stat. Ann. §§ 8541, 8542.

[78] See Lockwood v. City of Pittsburgh, 751 A.2d 1136, 1139 (Pa. 2000) (noting that 42 Pa. Const. Stat. Ann. § 8542 permits eight types of negligence suits, such as suits involving vehicle liability).

[79] Compl. at ¶ 74.

[80] See 77 Pa. Stat. § 481(a) ("The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees").

[81] Id. at § 481(b).

15

Plaintiff argues that the "personal animus" or "third party attack" exception to WCA preemption applies.[82] To fit within this exception, the third party's attack must have been motivated by his animosity against the injured employee and not directed against the injured person because of the employment.[83] If the third party would have attacked a different person in the same position as the injured employee, the attack falls outside the exception.[84]

Even accepting all facts in the complaint as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to allege any facts that suggest Mackie assaulted her for personal reasons unrelated to her employment. To the contrary, the facts suggest that Mackie assaulted Plaintiff because she was running to call security and impeding his escape from custody during the course of her employment as a nurse. It appears that, if any other medical professionals were in the same position as Plaintiff, Mackie would have assaulted them in the same manner. Accordingly, the personal animus or third party attack exception does not apply here. Plaintiff's state law claims against her employers AEMC, AEHN, and AEMA are preempted by the WCA and will be dismissed.[85]

It is unclear how the DPS is at all related to the claims asserted in the complaint. In fact, the complaint fails to mention any specific claims against DPS. Instead, DPS is mentioned only in the sense that it is a corporation "located at 1319 Tabor Road, Philadelphia, PA 19141" and that DPS may have "owned leased, rented, maintained, controlled, possessed, managed,

---

[82] Pl.'s Resp. to Mot. to Dismiss (Doc. No. 12) at 5.

[83] *Kortyna v. Lafayette College*, 47 F. Supp. 3d 225, 244 (E.D. Pa. 2014); *see also Kohler v. McCrory Stores*, 615 A.2d 27, 29-30 (Pa. 1992).

[84] *Kovach v. Turner Dairy Farms, Inc.*, 929 F. Supp. 2d 477, 496 (W.D. Pa. 2013) (citing *Hershey v. Ninety-Five Assoc.*, 604 A.2d 1068, 1072 (Pa. Super. Ct. 1992)).

[85] Plaintiff also contends that the state law claims against Defendants should not be dismissed "because there are no allegations that Plaintiff worked for the defendant responsible for providing security." Pl.'s Resp. to Mot. to Dismiss (Doc. No. 12) at 4. This argument is unpersuasive. Plaintiff cannot avoid WCA preemption of the claims against her employer merely by arguing that another entity may be responsible for providing security.

16

maintained, and/or occupied the premises located at 5501 Old York Road," which appears to be the same address at AEMC.[86] These facts, without more, do not state any claim against DPS. Consequently, DPS will be dismissed as a Defendant in this case.

### C. Amendment of the Complaint

Plaintiff will not be granted leave to amend the complaint. Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires."[87] Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility.[88] "[A] district court need not grant leave to amend if 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'"[89] After reviewing the pleadings, it is clear that amendment of the complaint as to the dismissed claims would be futile because these claims either fail as a matter of law or have no factual basis, and amendment of the complaint will not cure the defects.[90]

## IV. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss will be granted in part and denied in part. An appropriate order follows.

---

[86] Compl. at ¶¶ 13-15.

[87] Fed. R. Civ. P. 15(a).

[88] *In re Burlington Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir. 1997).

[89] *Kundratic v. Thomas*, 407 F. App'x 625, 630 (3d Cir. 2011) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

[90] Defendants the City of Philadelphia, C.O. Cox, and C.O. Doman have argued throughout their motion to dismiss that many of Plaintiff's asserted claims are frivolous. Defendants correctly note that Plaintiff raises several claims that have no basis in law or fact. Thus, these claims will be dismissed with prejudice. Plaintiff's novel theories of federal and state law in raising these claims cannot be countenanced here.